UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED RENTALS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | |
| JIM HORN, ) | |
| ) | |
| Defendant. ) | AUGUST 17, 2011 |

## COMPLAINT

Plaintiff, United Rentals, Inc., and its affiliates (collectively "United" or "Plaintiff"), by and through United's undersigned attorneys, and for its Complaint for injunctive and other relief against Defendant, Jim Horn ("Horn" or "Defendant"), hereby state and allege the following:

**Nature of Action**

1.   This action is based on the willful breach of confidentiality clauses and restrictive covenants contained in a confidentiality and non-competition agreement, and sets forth claims for breach of contract and violation of the Uniform Trade Secrets Act.

**Parties, Jurisdiction and Venue**

2.   United Rentals, Inc. is a Delaware corporation with its principal places of business in Greenwich, Connecticut. United is engaged in the business of, among other things, selling and renting certain equipment/merchandise including construction equipment, aerial equipment, landscaping equipment, home repair and maintenance equipment, and contractor supplies throughout the United States, including Tennessee.

Additionally, and at all relevant times thereto, United operated a branch in Chattanooga, Tennessee ("Chattanooga Branch").

3. Upon information and belief, at all times relevant hereto and up to June 9, 2011, Horn was a citizen of Georgia and an employee of United.

4. Jurisdiction over this matter arises under 28 U.S.C. § 1332 (diversity of citizenship) and 28 U.S.C. § 1367 (supplemental jurisdiction). The amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Horn contractually submitted to the exclusive jurisdiction of this Court when he agreed to the terms of his confidentiality and non-competition agreement ("Agreement") with United dated November 12, 2008. The Agreement provides, in relevant part, the following:

> <u>Consent to Personal Jurisdiction</u>. Employee hereby agrees that the interpretation and enforcement of the provisions of this Agreement shall be resolved and determined exclusively by the state court sitting in Fairfield County, Connecticut or the federal courts in the District of Connecticut and Employee hereby consents that such courts be granted exclusive jurisdiction for such purpose.

The claims contained herein arise, in part, out of the terms of the Agreement referenced above.

6. Venue is proper in this Judicial District under 28 U.S.C. § 1391(a)(2) & (a)(3) because the intellectual property that is the subject of the action is derived from and/or maintained in this district and because Horn contractually submitted to the exclusive jurisdiction of this Court when he agreed to the terms of the Agreement.

**General Allegations**

7.  At all relevant times up until June 9, 2011, Horn was an employee of United. During the course of his employment, Horn served as an Outside Sales Representative.

8.  United's Chattanooga Branch generates significant revenues from, among other things, the sale and rental of aerial and other equipment to its customers. During his employment, Horn contributed towards the revenues of the Chattanooga Branch and served as the sole Outside Sales Representative for that branch.

9.  As an Outside Sales Representative, Horn further had controlled access to certain of United's trade secrets. United's trade secrets include, but are not limited to, such things as: (1) gross rental data; (2) budget processes from market areas and rental projections; (3) marketing plans and strategies; (4) details of contracts; (5) actual and prospective customer data, including identities of United customers (i.e., United's customer list and customer contacts); (6) pricing and discount information; (7) cost information, including special programs and discount structures negotiated with particular equipment vendors; (8) information on the sources and nature of financing United is able to secure for its customers; and (9) fleet information, including its make-up, cost and utilization.

10.  United's trade secrets and other confidential information are only shared with employees as necessary, and only to those who agree to keep it confidential.

11.  None of the foregoing trade secrets discussed above were known or open to the public and United undertook reasonable measures to keep the trade secrets confidential and out of the public domain.

**<u>Horn's Agreement</u>**

12.  In order to protect its customer goodwill, confidential information, and trade secrets, United requested that Horn enter, and Horn agreed to enter, into the Agreement.

13.  In this regard, Horn agreed to sign the Agreement that contained a proscription against divulging confidential information.

14.  The Agreement contained the following provisions, to which Horn agreed, that outlined and defined "Confidential information" as follows:

(h)  "Confidential Information" shall mean all information which is valuable to [United] and not generally known to the public, and includes, but is not limited to:

    (i)  business, strategic and marketing plans and forecasts, and the past results of such plans and forecasts;

    (ii)  business, pricing and management methods;

    (iii)  employee handbooks, operations manuals and best practices memoranda;

    (iv)  finances, strategies, systems, research, surveys, plans, reports, recommendations and conclusions;

    (v)  names of, arrangements with, or other information relating to, the Company's customers, equipment suppliers, manufacturers, financiers, owners or operators, representatives and other persons who have business relationships with the Company or who are prospects for business relationships with the Company;

    (vi)  technical information, work product and know-how;

    (vii)  cost, operating, and other management information systems, and other software and programming;

    (viii)  the name of any company or business, any part of which is or at any time was a candidate for potential acquisition by the Company, together with all analyses and other

4

        information which the Company has generated, compiled or otherwise obtained with respect to such candidate, business or potential acquisition, or with respect to the potential effect of such acquisition on the Company's business, assets, financial results or prospects[.]

15.    The Agreement also contained a restrictive covenant, which Horn accepted that restricted Horn from, among other things, competing directly or indirectly with United, within a limited Restricted Area, during his employment and 12 months thereafter. Specifically, the Agreement provides:

    (a)    During [your] employment by [United] and for a period of 12 months immediately following the termination of employment for any reason whatsoever, (whether or not for cause, by resignation or otherwise) [you] will not, directly or indirectly (whether through affiliates, relatives or otherwise):

        (i)    in any Restricted Area, be employed, retained, or otherwise provide the same services as [you] provided to [United], to any person or entity who or which then competes with the Business. . . . For purposes of this Agreement, the term "Restricted Area" shall mean the area within which [you] provide[ ] services to the Company and is limited to the following counties:

            <u>Tennessee</u>: - Hamiliton, Sequatchie, Bradley, Polk, McMinn, and Meis.
            <u>Georgia</u><u>: - Catoosa, Walker, Dade, Whitefield, Gordon, Chattooga, and Murray</u>

        . . .

        (ii)    solicit the business of, or call upon, any person or entity, or affiliate of any such person or entity, who or which is or was a customer, supplier, manufacturer, finder, broker, or other person who had a business relationship with [United] and who [you] had material and direct contact at any time during the period of [your] employment, for the purpose of providing or obtaining any product or service reasonably deemed competitive with any product or service then offered by [United];

5

\* \* \* \* \* \* \* \*

  (vi) own any interest in or be employed by or provide any services to any person or entity which engages in any conduct which is prohibited to [you] under this Section[.]

**Breaches/Tortious Conduct of Horn**

16. On or about June 9, 2011, Horn's employment at United ended.

17. Upon information and belief, Horn has now begun marketing and/or providing competitive services within the Restricted Area. In this regard, upon information and belief, United has been made aware that Horn has targeted customers associated with specific job assignments he was responsible for while employed at United.

18. Upon information and belief, Horn is performing these services on behalf of Ahern Rentals, Inc. ("Ahern"). Upon information and belief, Ahern operates throughout the state of Tennessee and competes directly with United. Upon information and belief, Ahern is operating and/or targeting customers within the Restricted Area.

19. Upon information and belief, in engaging in this activity, Horn has used or inevitably will use the valuable confidential trade secrets of United and/or provide same to Ahern. Indeed, United has information that Horn has already begun visiting, contacting, and/or soliciting United's targeted customers, and is engaging in such conduct within the Restricted Area.

20. Horn committed the acts alleged herein with knowledge that his conduct would harm the financial interest of United.

21. Horn committed the acts alleged herein for his own benefit and the benefit of Ahern.

**COUNT I – <u>Breach of the Agreement</u>**

22. United realleges and reincorporates herein by reference the allegations set forth in Paragraphs 1 through 21 above as though fully set forth herein.

23. United and Horn exchanged valuable consideration in support of the Agreement.

24. United duly performed all of its obligations pursuant to the Agreement.

25. United is informed and believes that in his new position, Horn has actively competed with United in soliciting customers and/or competing within the Restricted Area, utilizing United's trade secrets and/or confidential information in conjunction with his efforts.

26. Horn's conduct within the Restricted Area and/or in soliciting customers following his employment with United constitutes a material breach of the Agreement, including the restrictive covenants contained therein.

27. Horn's conduct set forth in the previous paragraph further constitutes a material breach of the implied covenant of good faith and fair dealing.

28. Given his position with United, Horn was privy to confidential trade secrets, including, but not limited to, pricing, customer contacts and information, which he will inevitably disclose to and/or use on behalf of Ahern.

29. Upon information and belief, after leaving United, and thereafter, in violation of the Agreement, Horn provided Ahern with confidential and/or trade secrets and Horn used said information in an effort to compete with United on behalf of Ahern.

30. Horn's conduct, all while using United's confidential trade secrets, is a material breach of the Agreement, including, but not limited to, the restrictive covenants.

31. As a proximate result of Horn's wrongful conduct, United has suffered and will continue to suffer irreparable harm and money damages.

32. As a result of the foregoing activities, Horn is liable to United for breach of contract.  United has suffered, and will continue to suffer, substantial and irreparable damages to its business and customer goodwill, as well as losses in an amount in excess of $75,000.00, but not yet fully ascertained, and which will be further determined according to proof.

33. United has no adequate remedy at law for Horn's willful breach of the Agreement and restrictive covenants set forth or incorporated therein, in that: (i) United's trade secrets are unique and valuable property that have no readily determinable market value; (ii) the Defendant's actions constitute interference with United's goodwill and customer relations; (iii) the Defendant's wrongful conduct and the damage resulting therefrom is continuing; and (iv) Defendant acknowledged in writing that a breach of the Agreement would constitute irreparable harm to United.

**COUNT II -   Trade Secret Misappropriation in Violation of the Uniform Trade Secrets Act**

34. United realleges and reincorporates herein by reference the allegations contained in Paragraphs 1 through 33 above as though fully set forth herein.

35. In his position as an Outside Sales Representative, Horn had access to confidential information, such as the following:

- United's confidential customer lists that are not readily ascertainable from public sources.  United spent considerable time, energy and money cultivating these customers.

- United's confidential financial information and cost and profit margins. These figures are not available to the public and are held in confidence by United.

- United's cost information and discount information from certain vendors. United has been able to negotiate special terms with vendors that are not readily ascertainable by competitors and are terms that are kept in confidence by United.

- United's fleet information, including its make-up, cost and utilization. This information is not available to the public and is held in confidence by United.

- United's marketing plans and strategies, including United's potential satellite operations and other expansion plans.

36. The aforementioned trade secrets are not known to all United employees, nor are they known to those working in the industry. United's trade secrets were conveyed confidentially to Horn, as necessary, in order to allow Horn to fully carry out his job responsibilities on behalf of United.

37. United took reasonable measures to keep the trade secrets confidential. As stated above, only certain employees had access to trade secrets. Trade secret information was provided only to those who, like Horn, agreed to keep such information confidential. Indeed, United required Horn to sign a confidentiality agreement protecting the integrity of this information.

38. This information is highly valuable to United, and could enable United's competitors to challenge pricing and vendor relationships and/or steal private customer lists.

39. United spent considerable sums of money acquiring, maintaining and guarding this information.

40. Upon information and belief, Horn misappropriated United's trade secrets when he began soliciting targeted customers, using his knowledge of whom to contact, their product and service demands, and United's preferential pricing and terms.

41. Upon information and belief, Horn misappropriated United's trade secrets when he wrongfully used those trade secrets on his own behalf and on Ahern's behalf, and when he, on information and belief, provided same with his knowledge of those trade secrets.

42. There is a substantial threat that Horn will continue to use and disclose United's trade secrets in an effort to acquire United's customers for the benefit of his new employer and himself personally.

43. Horn willfully and maliciously misappropriated United's trade secrets, in that Horn intended to solicit customers for the benefit of Ahern and his own personal financial interest, all to the detriment of United.

44. Horn's wrongful conduct is a violation of the Uniform Trade Secrets Act.

45. As a direct and proximate result of Horn's wrongful conduct, United has suffered and will continue to suffer irreparable damages and money damages.

46. As a direct result of Horn's willful conduct, United is entitled to punitive damages and attorneys' fees.

47. Based on Horn's unlawful acts as alleged herein, United is being irreparably harmed in that: (i) United's trade secrets are a unique and valuable property that have no readily determinable market value; (ii) the Defendant's actions constitute interference with United's goodwill and customer relations; (iii) the Defendant's wrongful conduct and the damage resulting therefrom, is continuing; and, (iv) the Defendant acknowledged, in writing, that a breach of the Agreement would constitute irreparable harm to United.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff **UNITED** respectfully requests judgment in its favor and against Defendant **JIM HORN** as follows:

1. That Defendant breached the Agreement with United and the restrictive covenants contained therein;

2. That Defendant violated the Uniform Trade Secrets Act.

3. That the Court enter an Order, preliminary and permanently enjoining Defendant, **JIM HORN**, from violating the terms of the Agreement and from misappropriating, using, or disclosing United's trade secrets;

4. That the Court award United compensatory damages arising out of Defendant's unlawful conduct alleged herein;

5. That the Court award United punitive damages;

6. That the Court award United its attorneys' fees;

7. That the Court award United punitive damages, attorneys' fees, expenses, interest, and costs, pursuant to the Agreement and/or common law; and

8. That the Court grant United such additional relief as is just and proper, including, but not limited to the imposition of a constructive trust and disgorgement of all compensation and other benefits which Defendant has derived or will derive as a result of his violation of the Agreement.

Dated this 17th day of August, 2011.

        THE PLAINTIFFS
        UNITED RENTALS, INC.


By: _____/s/_____
    Brian C. Roche – ct 17975
    Gerald C. Pia, Jr. – ct 21296
    Roche Pia, LLC
    Two Corporate Drive, Suite 248
    Shelton, CT 06484
    Phone: (203) 944-0235;
    Fax: (203) 567-8033
    E-mail: broche@rochepia.com
           gpia@rochepia.com